UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN THE MATTER OF THE
COMPLAINT OF MALCOLM H. WIENER      :      Docket No. 302 CV 2291(WWE)
and CAROLYN WIENER, AS OWNERS OF    :
ONE 2000, 18 FOOT SEA DO CHALLENGER :
(H.I.N. CECL03498000),              :
FOR EXONERATION FROM OR             :      December 30, 2003
LIMITATION OF LIABILITY,            :

        Plaintiffs/Petitioners.     :


**MEMORANDUM OF LAW IN SUPPORT OF
PETITIONERS MOTION FOR SUMMARY JUDGMENT**

ORAL ARGUMENT REQUESTED
<u>TESTIMONY NOT REQUIRED</u>

## TABLE OF CONTENTS

                                                                                                    **Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

SUMMARY OF FACTS ................................................................................................................ 2

PROCEDURAL HISTORY ............................................................................................................ 3

SUMMARY JUDGMENT STANDARD ......................................................................................... 4

POINT I

        THE LIMITATION OF LIABILITY ACT IS APPLICABLE TO PLEASURE
        CRAFT ............................................................................................................................ 6

POINT II

        UNDER THE LIMITATION OF LIABILITY ACT, A VESSEL OWNER MAY
        EITHER BE EXONERATED FROM THE LIABILITY TOTALLY OR MAY LIMIT
        THEIR LIABILITY IF OWNER DID NOT HAVE PRIVITY AND KNOWLEDGE
        OF THE FAULT OR NEGLIGENCE THAT CAUSED A CLAIMANT'S INJURY .................... 5

POINT III

        CLAIMANTS CANNOT SUSTAIN ITS INITIAL BURDEN ESTABLISHING
        FAULT OF VESSEL OWNER .......................................................................................... 7

POINT IV

        PETITIONERS DID NOT HAVE PRIVITY AND KNOWLEDGE OF THE
        CAUSE OF CLAIMANTS' INJURIES .............................................................................. 9

POINT V

        CLAIMANTS' ASSERTION THAT PETITIONERS KNEW THAT
        THE VESSEL WAS BEING OPERATED WITH MORE THAN THE MAXIMUM
        CAPACITY OF PASSENGERS IS PATENTLY FALSE ...................................................... 10

POINT VI

        CLAIMANT RON GARCIA-VIDAL'S CLAIM FOR LOSS OF SOCIETY/
        CONSORTIUM IS NOT COGNIZABLE UNDER WELL-ESTABLISHED
        ADMIRALTY LAW PRINCIPLES .................................................................................. 11

CONCLUSION ......................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES:**

Application of Theisen, 349 F.Supp.737 (E.D.N.Y.1972).............................................. 6, 7

Carnival Cruise Lines v. Red Fox Industries, Inc., 813 F.Supp. 1185 (E.D. La. 1993)... 11

Celotex v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986) ........................................ 4

Chan v. Society Expeditions, Inc., 39 F.3d 1398 (9th Cir. 1994).................................... 11

Cornell v. Phipps, 317 U.S. 406, 63 S.Ct. 291 ............................................................... 6, 7

DeLoach v. Campanhia De Navegacao Lloyd Brasileiro, 782 F.2d 438
(3rd Cir. 1986) .......................................................................................................... 12

Dunbar v. American Commercial Barge Lines Company, 771 F.Supp. 151
(M.D. La. 1991) ........................................................................................................ 11

Earhart v. Chevron USA, Inc., 852 F.Supp. 515 (E.D. La. 1993).................................... 11

Executive Jet Aviation v. City of Cleveland, 409 U.S. 249 93 S.Ct. 493 (1972)............ 5

Flat-Top fuel Co. v. Martin, 85 F.2d 39 (2 Cir.)............................................................ 7

Foremost Ins. Co. v. Richardson, 457 U.S. 668, 102 S. Ct. 2654 (1982)....................... 5

Horsley v. Mobil Oil Corp., 15 F.3d 200 (1st Cir. 1994) ............................................. 11

In Matter of Caribbean Sea Transport, Ltd., 748 F.2d 622 (11th Cir. 1984).................... 7

In the Matter of the Complaint of Group Therapy, 2003 A.M.C. 1904........................... 6

Kromer v. Guglielmo, 897 F.2d 58 (2d Cir. 1990)........................................................ 5

La Bourgogne, 210 U.S. 95, 122, 28 S.Ct 664, 52 L.Ed. 1973..................................... 7

Lane v. G&C Towing Company, Inc., 798 F.Supp. 358 (S.D.W.Virginia 1992)............ 11

Madore v. Ingram Tank Ships, Inc., 732 F.2d 475 (5th Cir. 1984)................................ 11

Maxwell v. Best Workover, Inc., 1992 WL 6295 (E.D. La.)............................................. 12

Miles v. Apex Marine Corp., 498 U.S. 19 (1990) ....................................................... 11, 12

Murray v. Anthony Bertucci Construction Co., 745 F.Supp. 373 (E.D. La. 1990) ......... 12

Nelsen v. Research Corporation of the University of Hawaii, 784 F.Supp. 770
(D. Hawaii 1992) ............................................................................................................. 11

Preston v. Frantz, 11 F.3d 357 (2d Cir. 1993) ............................................................... 12

Richardson v. Harmon, 222 U.S. 96, 32 S.Ct. 27 56 L.Ed. 110 ..................................... 7

Robertson v. Arco Oil & Gas Co., 766 F. Supp. 538 (W.D. La. 1991) .......................... 12

Shield v. Bayliner Marine Corp., 822 F.Supp. 81 (D.C. Conn. 1993).............................. 11

Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892 (1990)...................................................... 5

The 84-H, 296 F.427 (2d.Cir. 1923) ................................................................................. 7

Title v. Aldacosta, 544 F.2d 752 (5th Cir.1977)............................................................... 7

Trail v. Northern Eagle Partners, L.P., 1993 A.M.C. 591 (D. Alaska 1992)................... 11

Wahlstrom v. Kawasaki Heavy Industries, Ltd., 4 F.3d 1084 (2nd Cir. 1993)................. 11

Warnken v. Moody, 22 F.2d 960 (5 Cir.) ......................................................................... 7

Wright v. K-C Towing Company (1991 WL211636 (E.D.La.)....................................... 11

## FEDERAL RULES OF CIVIL PROCEDURE:

Rule 56(c), Federal Rules of Civil Procedure.................................................................. 4

Limitation of Liability Act 46 U.S.C. 183(a)................................................................... 6

iii

## PRELIMINARY STATEMENT

Plaintiffs/Petitioners, Malcolm H. Wiener and Carolyn Wiener, (hereinafter "Petitioners") as owners of a Sea Doo Challenger power boat, (hereinafter "the vessel") herein move for summary judgment for an order dismissing claimants', Nancy Garcia-Vidal and Ron Garcia-Vidal (hereinafter "Claimants") negligence claims against petitioners. Claimants allege that claimant, Nancy Garcia-Vidal, a passenger aboard petitioner's vessel, was injured as a result of the incompetence and negligent operation of the vessel by petitioner's employee, Thierry Raymond (hereinafter "Raymond") who was operating the vessel at the time of claimants' alleged injuries. Claimants allege that petitioners had privity and knowledge that Raymond was an incompetent operator and that Raymond was operating the vessel in a negligent manner at the time of the incident. Claimants' allege that as a result of petitioners' negligence, petitioners' are liable for the injury and damages to claimants. Petitioners are entitled to prevail on summary judgment because there are no material facts to support claimants' assertion that petitioners that Raymond was an incompetent operator or that Raymond was operating the vessel in a negligent manner at the time of the incident, and that petitioners had privity and knowledge of the same prior to the commencement of the voyage in question. The material facts support the opposite conclusion. Raymond was an experienced, competent and prudent mariner and at time of the incident, and was operating the vessel competently and safely. Thus, claimants' claims against petitioners are unsupportable and must be denied. Accordingly, petitioners' motion for summary judgment exonerating petitioners from liability should be granted and/or limiting their liability, if any, to the value of the vessel at the conclusion of the voyage in question.

1

## SUMMARY OF FACTS

Petitioners are the owners of the vessel, an eighteen foot Sea Doo Challenger 2000 power boat. On September 9, 2002, claimants were attending a company picnic at the Connecticut waterfront home of the petitioners, which was being given by claimant Ron Garcia-Vidal's employer, the Milburn Group. Petitioner Malcolm H. Wiener had previously been an officer and director of the Milburn Group, but had no formal connection to the Milburn Group on the date of the incident. Raymond was an employee of the petitioners. His duties included storing and docking the vessel and operating the vessel at the request of the petitioners. Raymond was an experienced and competent boater. He was previously employed as a power boat operator for a charterer of small pleasure boats in France. He completed, on his first attempt, the required Connecticut Department of Environmental Protection Safe Boating Course and passed their written examination. Consequently, he was issued a State of Connecticut Safe Boating Certificate, which he received in July, 2001. After receiving the Certificate in July 2001, he was trained on board the vessel by its previous caretaker/operator on how to properly operate and maintain the vessel. For two months prior to the incident, Raymond operated the vessel approximately four times per week, either taking petitioner Malcolm Weiner and/or his two children aboard as passengers for trips on the water of Greenwich, Connecticut on the Long Island Sound. Additionally, provided to Raymond and kept on board the vessel were all of the materials supplied to the Wieners with the purchase of their vessel. Moreover, petitioners permitted Raymond to take their two young daughters on water-skiing trips on the Long Island Sound, at which time Raymond was the exclusive operator of the vessel. Moreover, the petitioners had observed Raymond operate the

2

vessel in question on numerous occasions and they have never observed him operate the vessel in a negligent, careless or reckless manner.

On the afternoon of September 9, 2001, one of the petitioners directed Raymond to take guests attending the Milburn Group outing on the vessel for rides in the waters of Greenwich, Connecticut. After six similar excursions without incident, claimants and four other passengers boarded the vessel for the final voyage. Including Raymond, there were seven persons aboard the vessel. Claimant, Nancy Garcia-Vidal chose to sit in the bow seat although she had been offer a stern seat.   Approximately fifteen minutes into the ride, after having passed through the speed restriction zone, which comprises most of Greenwich Harbor, Raymond turned the vessel around to head back to petitioners' home. After turning the vessel and again accelerating; i.e., as he had done on the previous six voyages,  to approximately fifteen miles per hour, a wave impacted the hull of the vessel. Claimant, Nancy Garcia-Vidal fell from her seat onto the deck of the boat striking her tail bone and left wrist. When Raymond observed that she had fallen from her seat, he stopped the boat, checked her condition, and called the petitioners on his cell phone, requesting that they call an ambulance. Therafter, Raymond headed to shore where Claimant, Nancy Garcia-Vidal was met by an ambulance at the petitioners' home and was taken to Greenwich, Connecticut hospital, where she was treated.

## PROCEDURAL HISTORY

Petitioners filed a Complaint for Exoneration from or Limitation of Liability, pursuant to 46 U.S.C. § 183 *et seq*, on December 23, 2002.  Petitioners seek exoneration from liability and/or limitation of their liability for any injuries to claimants stemming from the incident September 9,

3

2001 as the boat owners had no knowledge or privity with regard to the cause of the accident.

Claimants filed and served Claims and an Answer on February 12, 2003.

## SUMMARY JUDGMENT STANDARD

Summary Judgment is an appropriate remedy when there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure.

The moving party is not obligated to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the non-moving party bears the burden of proof. Rather, the moving party may discharge its burden "by showing - - that is, pointing out to the district court - - that there is an absence of evidence to support the nonmoving party's case." Celotex v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986).

Once that burden is met, the non-moving party may not rest on the allegations of the pleadings, but must meet the motion with specific facts and supporting exhibits, to show that there is a genuine issue of material fact, and *summary judgment must be entered against a party that fails to establish an element essential to its case* as to which it will bear the burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2552, 2553 (1986).

Here, no genuine issue of fact exists. The uncontraverted evidence demonstrates that Raymond, the operator of the boat was a competent mariner and acted prudently and safely at the time of the incident, and possessed all of the licenses/certificates required by the State of Connecticut to operate the Wieners' vessel. As such, the claimants have no basis for claiming that the petitioners had privity and knowledge of the cause of claimants' injury and damages.

Based on the foregoing standards, the material facts and the substantive law as set forth below, this matter should be resolved by way of summary judgment.

## POINT I

### THE LIMITATION OF LIABILITY ACT IS APPLICABLE TO PLEASURE CRAFT

The United States Supreme Court promulgated the test for maritime tort jurisdiction in the context of pleasure craft in Foremost Ins. Co. v. Richardson, 457 U.S. 668, 102 S. Ct. 2654 (1982) [ruling that the negligent operation of a boat on navigable waters has a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction], and Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892 (1990) [finding maritime jurisdiction when a pleasure yacht was destroyed by fire while docked at a marina]. These cases applied the test for admiralty jurisdiction set forth in Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 253, 93 S.Ct. 493 (1972).

Thereafter, the Second Circuit Court of Appeals specifically addressed the issue of whether the Limitation of Liability Act, 46 U.S.C. § 183, et seq., should apply to pleasure craft in Kromer v. Guglielmo, 897 F.2d 58 (2d Cir. 1990). The case involved a wrongful death action resulting from the collision of two pleasure craft in Smithtown Bay, Long Island. The Court of Appeals held "the fact that the instant admiralty jurisdiction, provides a further reason to believe the [Limitation] Act applies. We therefore conclude that the language of the statute and current case law are controlling, and pleasure craft are subject to the Act's limitation on liability." Guglielmo, 897 F.2d at 61.

6

## POINT II

## UNDER THE LIMITATION OF LIABILITY ACT, A VESSEL OWNER MAY EITHER BE EXONERATED FROM THE LIABILITY TOTALLY OR MAY LIMIT THEIR LIABILITY IF OWNER DID NOT HAVE PRIVITY AND KNOWLEDGE OF THE FAULT OR NEGLIGENCE THAT CAUSED A CLAIMANT'S INJURY

Under the Limitation of Liability Act, a vessel owner is permitted to limit its liability resulting from any occurrence for which the vessel is liable, to the post casualty value of the vessel and its pending freight, provided such injuries were incurred without the owner's "privity and knowledge."

The Limitation of Liability Act 46 U.S.C. 183(a), provides in pertinent part:

> The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

(emphasis added)

In a Limitation of Liability proceeding, a claimant has the initial burden of showing evidence of fault on behalf of the ship owner who is seeking exoneration from or limitation of liability before the burden then shifts to the owner to show a lack of privity or knowledge of such fault. In the Matter of the Complaint of Group Therapy, 2003 A.M.C. 1904;  Cornell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943);  Application of Theisen, 349 F.Supp.737, 740 (E.D.N.Y. 1972).  A claimant may establish evidence of fault by demonstrating either that the vessel was unseaworthy, or that the cause of the accident was negligence. Exoneration will be granted only where there is no evidence of any contributory fault of the part of the ship owner or

7

ship's crew. Title v. Aldacosta, 544 F.2d 752, 755 (5th Cir.1977) If exoneration is not granted, the ship owner may nevertheless prevail on the plea for limitation of liability. In Matter of Caribbean Sea Transport, Ltd., 748 F.2d 622, 626 (11th Cir. 1984).

The United States Supreme Court has declared that "privity and knowledge" in the case of individual owners "as used in the statute means some personal participation of the owner in the fault or negligence which caused or contributed to the loss or injury." Cornell v. Phipps, 317 U.S. 406, 63 S.Ct. 291; The 84-H, 296 F.427,429 (2d.Cir. 1923). See also Warnken v. Moody, 22 F.2d 960 (5 Cir.); Flat-Top fuel Co. v. Martin, 85 F.2d 39 (2 Cir.); La Bourgogne, 210 U.S. 95, 122, 28 S.Ct 664, 773, 52 L.Ed. 973; Richardson v. Harmon, 222 U.S. 96, 103, 32 S.Ct. 27, 29, 56 L.Ed. 110.)

## POINT III

### CLAIMANTS CANNOT SUSTAIN ITS INITIAL BURDEN ESTABLISHING FAULT OF VESSEL OWNER

In all cases, the claimants have the burden of proof to first establish fault on behalf of the vessel owners. In claimants' claim filed in response to petitioners' complaint for exoneration from or limitation of liability, claimants assert that "[Petitioners], at the time they allowed Thierry Raymond to operate said boat, knew or should have known that he was inexperienced, inattentive, and reckless in operation of said boat."

Claimants have the burden of establishing that the operator or crew of the vessel was incompetent. Application of Theisen, 349 F.Supp. 737, 739 (E.D.N.Y. 1972). The material facts of this case clearly establish claimants cannot meet their burden. There is no evidence to support claimants assertion that Raymond was inexperienced, inattentive, and reckless. The evidence

8

supports just the opposite conclusion. Raymond worked as a boat operator, for several summers, for a company that rented power boats on Lake Annecy, France. (Exhibit A - Deposition of Raymond pp.9-19). When he started working for petitioners in 2001, he was trained for numerous hours on board the vessel, by the prior caretaker and operator of the vessel, on how to properly operate and maintain the vessel. (Exhibit B-Deposition of Raymond pp 27-30). After Raymond was hired by petitioners to be the exclusive operator of the vessel, he attended and completed the required Connecticut Safe Boating Course administered by the Department of Environmental Protection, and received a Connecticut Safe Boating Certificate (Exhibit C - Deposition of Raymond pp.25-26 and Copy of Connecticut Safe Boating Certificate). Under Connecticut law, a holder of a Safe Boating Certificate may operate all vessels, save a personal watercraft; i.e., a jet ski. After Raymond received the Connecticut Safe Boating Certificate in July, 2001, he became the exclusive operator of the vessel for the petitioners. From mid-July, 2001 to the day of the accident, Raymond operated the vessel approximately four times per week, either taking petitioner, Malcolm Weiner on short cruises along the Connecticut coast, or day trips on the sound with petitioners' young daughters aboard (Exhibit D - Deposition of Raymond pp.34-35, 39). On the day of the accident, prior to claimants' ride, Raymond had made six previous voyages in the waters of Greenwich, Connecticut, all along the same course and all without incident (Exhibit E - Deposition of Raymond pp. 57-66).

The evidence in this case clearly demonstrates that Raymond was a well trained, experienced and competent operator of the vessel. Thus, claimants' assertion that petitioners knew or should have known that Raymond was inexperienced is groundless and cannot be sustained by the evidence.

Claimants further assert in their claim, that petitioners knew or should have known that Raymond was inattentive and reckless in operation of said boat. This claim is also not supportable. Petitioners knew Raymond had previous experience operating power boats (Exhibit F - Malcolm Weiner Deposition pp. 37; Carolyn Weiner Deposition pp.21-23). Petitioners knew he had taken the Connecticut Safe Boating Course and received his Safe Boating Certificate prior to operating the vessel. (Exhibit G - Malcolm Weiner deposition pp. 34,40; Carolyn Weiner Deposition p. 21). Petitioners also knew that Raymond had been trained by the previous operator/caretaker of the vessel (Exhibit H - Malcolm Weiner deposition pp.37; Carolyn Weiner deposition p. 56). Further, on numerous occasions prior to the day of the accident, petitioner, Malcolm Weiner, had the opportunity to observe Raymond operate the vessel. Often, during the summer of 2001, prior to the accident, Raymond took petitioner, Malcolm Weiner and/or his two young daughters on voyages in the waters of Greenwich, Connecticut. At no time did petitioner Malcolm Wiener ever observe Raymond operate the vessel in an inattentive, reckless or incompetent manner. (Exhibit I - Malcolm Weiner deposition pp. 38, 45, 46). To the contrary, petitioners believed Raymond only to be a competent and safe operator, so much so that they entrusted their safety and the safety of their two young daughters to him. Moreover, no evidence was adduced which indicates that the Wieners knew and/or should have suspected that Raymond would negligently operate the vessel on the claimants' voyage, assuming arguendo he did, which is denied.

10

## POINT IV

### PETITIONERS DID NOT HAVE PRIVITY AND KNOWLEDGE OF THE CAUSE OF CLAIMANTS' INJURIES

On the day of the accident, it is undisputed that petitioners were not aboard the vessel when claimant, Nancy Garcia-Vidal, sustained her injuries. Additionally, petitioners did not personally observe either the claimants' voyage or any other of the voyages taken on that day. Thus, there is no evidence that petitioners had any personal participation in any conduct which may have caused or contributed to claimant's injury on the vessel. As such, they could not have had privity or knowledge of any alleged negligent acts which may have caused the injury. (See Guglielmo, 897 F.2d at 61 [on the prior to claimants' ride issue of negligence, the court held that since petitioner was not present at the accident, he did not have knowledge or privity regarding the negligent acts that may have caused the injury].

## POINT V

### CLAIMANTS' ASSERTION THAT PETITIONERS KNEW THAT THE VESSEL WAS BEING OPERATED WITH MORE THAN THE MAXIMUM CAPACITY OF PASSENGERS IS PATENTLY FALSE

Claimants also assert in their claims that petitioners "should have known that the boat was being operated with more than the maximum capacity of passengers, which claimants assert was seven, on the date of the accident and thus created a dangerous situation and resulted in claimants' injuries." This assertion is, however, both inaccurate and false. Simply stated, the Sea Doo Challenger 2000 was certified by the U.S. Coast Guard to carry a maximum capacity of eight (8) persons. In fact, displayed on the vessel is the U.S. Coast Guard rating plate, which clearly indicates that the vessel is certified by the U. S, Coast Guard for up to and including 8 persons.

11

(Exhibit J) The testimony clearly demonstrates that at the time of the incident, there were actually only seven persons, which included the operator, aboard the vessel (Exhibit K - Deposition of Raymond pp.68-69). Thus, the vessel was not overloaded beyond its maximum capacity. In fact, the Sea Doo Challenger 2000 has eight seats (Exhibit L). During claimants' trip, there was an empty seat at the stern of the vessel, however, claimant, Nancy Garcia-Vidal chose to sit in the bow seat (Exhibit K).Thus, the evidence does not support claimants' assertion that Raymond created a dangerous condition by operating the boat with seven passengers aboard the vessel on the day of the incident.

## POINT VI

## CLAIMANT RON GARCIA-VIDAL'S CLAIM FOR LOSS OF SOCIETY/CONSORTIUM IS NOT COGNIZABLE UNDER WELL-ESTABLISHED ADMIRALTY LAW PRINCIPLES

Ron Garcia-Vidal's claim for loss of society/consortium, et cetera, herein must fail. In Miles v. Apex Marine Corp., 498 U.S. 19 (1990) the U.S. Supreme Court held that non-pecuniary damages, i.e., loss of society, were not recoverable under the general maritime law. Thereafter, the courts have repeatedly held that loss of society/consortium claims are not recoverable either in death cases or in personal injury cases. Moreover, the cases, decided in this circuit, following the U.S. Supreme Court's decision in Miles are in accord. See: Shield v. Bayliner Marine Corp., 822 F.Supp. 81 (D.C. Conn. 1993) (loss of enjoyment of life not recoverable in action brought by representative of victim killed in pleasure boating accident in territorial waters under general maritime law); Wahlstrom v. Kawasaki Heavy Industries, Ltd., 4 F.3d 1084 (2nd Cir. 1993) (non-dependent parents of deceased non-seaman killed within territorial waters cannot recover wrongful death damages in action brought under general maritime law). See also: Horsley v. Mobil Oil Corp., 15 F.3d 200 (1st Cir. 1994) ("no court of appeals, since Miles, has recognized a claim of loss of society under general maritime law"); Chan v. Society Expeditions, Inc., 39 F.3d 1398 (9th Cir. 1994); Earhart v. Chevron USA, Inc., 852 F.Supp. 515 (E.D. La. 1993); Carnival Cruise Lines v. Red Fox Industries, Inc., 813 F.Supp. 1185 (E.D. La. 1993); Lane v. G&C Towing Company, Inc., 798 F.Supp. 358 (S.D.W.Virginia 1992); Trail v. Northern Eagle Partners, L.P., 1993 A.M.C. 591 (D. Alaska 1992); Nelsen v. Research Corporation of the University of Hawaii, 784 F.Supp. 770 (D. Hawaii 1992); Dunbar v. American Commercial Barge Lines Company, 771 F.Supp. 151 (M.D. La. 1991); Wright v. K-C Towing Company (1991 WL211636 (E.D.La.); Madore v. Ingram

13

Tank Ships, Inc., 732 F.2d 475 (5th Cir. 1984), DeLoach v. Campanhia De Navegacao Lloyd Brasileiro, 782 F.2d 438 (3rd Cir. 1986); Murray v. Anthony Bertucci Construction Co., 745 F.Supp. 373 (E.D. La. 1990); Maxwell v. Best Workover, Inc., 1992 WL 6295 (E.D. La.); Robertson v. Oil & Gas Co., 766 F. Supp. 538 (W.D. La. 1991).

Moreover, the Second Circuit Court of Appeals strongly reiterated its holding that non-pecuniary damages, i.e., loss of consortium, are not available following the decision in Miles v. Apex, in Preston v. Frantz, 11 F.3d 357 (2d Cir. 1993). The Court of Appeals stated:

> On appeal, the Prestons contend that Wahlstrom was wrongly decided because the holding of Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed. 2d. 275 (1990), upon which our ruling was based, only applies to Jones Act seamen. We disagree. The language of conclusion in Miles is not limited to Jones Act seamen. (emphasis added)

Thus, it is the law of this circuit that claims for loss of consortium, or for other non-pecuniary damages, are not viable in cases resulting from injuries sustained on the navigable waters of the United States.

## CONCLUSION

There are no genuine material facts to support claimants' assertions that petitioners had privity and knowledge that Raymond was inexperienced and negligent in his operation of the vessel. The facts support that petitioners knew Raymond to be an experienced, competent and safe mariner and that they entrusted their own lives and the lives of their daughters. Furthermore, claimants' claim that petitioners had knowledge that the vessel was being operated with more than the maximum capacity of passengers is patently false. The maximum capacity of the vessel is eight passengers and there were seven persons, which included Raymond, on the vessel at the time of the incident. Moreover, even if claimants' assertions were true, which is specifically denied, no

evidence was adduced which indicates that the petitioners had privity and knowledge of those alleged assertions, thus requiring that petitioners' request to limit their liability be granted. Accordingly, all claimants' claims must be dismissed as a matter of law and petitioners motion for summary judgment for an order exonerating or limiting petitioners' liability must be granted.

Additionally, claimant Ron Garcia-Vidal's loss of consortium claim is not cognizable in admiralty and, therefore, must be dismissed.

Dated: Easton, Connecticut
      December 30, 2003

LOVEJOY & ASSOCIATES
Attorneys for Plaintiffs/Petitioners
Malcolm H. Wiener and Carolyn Wiener


By: _____
    Frederick A. Lovejoy (CT 03121)
    276 Center Road
    P.O. Box 56
    Easton, Connecticut 06612
    (203) 459-9941
    (203) 459-9943 (telefax)

WienerSummaryJudgment.doc

15